IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00474-CMA-KAS

TAMIE J. KELLER, and
LAWRENCE J. KELLER,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiffs' Amended Complaint Under Fed. R. Civ. P. 12(b)(6) With Prejudice** [#52] (the "Motion"). Plaintiffs filed a Response [#61] in opposition to the Motion [#52], and Defendant filed a Reply [#62]. The Motion [#52] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). The Court has reviewed these briefs, the entire case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#52] be **GRANTED**.

## I. Background

Plaintiffs assert three claims for relief against Defendant: (1) breach of insurance contract, by Plaintiff Larry Keller ("Mr. Keller") only, *see Am. Compl.* [#48] ¶¶ 133-39; (2) common law bad faith breach of insurance contract, by both Plaintiffs, *see id.* ¶¶ 140-45; and (3) statutory unreasonable delay and denial of benefits, by both Plaintiffs, *see id.* ¶¶

146-52. Plaintiffs seek damages as relief on these claims. *Am. Compl.* [#48] at 14. In the present Motion [#52], Defendant seeks dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6).

According to the allegations in the Amended Complaint [#48],[1] while driving on January 6, 2017, Plaintiff Tamie J. Keller ("Mrs. Keller") was involved in an automobile collision with Bryan Moseley ("Moseley"). *Am. Compl.* [#48] ¶¶ 7-8, 12. Mr. Moseley's employer Wear Parts and Equipment Company, Inc. was the registered owner of the vehicle Mr. Moseley was driving, and he was driving in the course and scope of his employment. *Id.* ¶¶ 9-11. The Greeley Police Department determined that Mr. Moseley was solely at fault for the accident. *Id.* ¶¶ 13-15.

Emergency responders used the "Jaws of Life" to extricate Mrs. Keller from her vehicle. *Id.* ¶¶ 16-17. Immediately following the accident, Mrs. Keller experienced severe pain in her body, neck, left shoulder, left hip, left abdomen, and both knees, and she had a concussion. *Id.* ¶ 18. Since that time, she has been treated for bone marrow edema and moderate distal clavicular spur of the left shoulder with bursitis, impingement on the left side of the neck, injuries to the bilateral facet joints located at C2-3 and C3-4, medial meniscus tear of the right knee, left hip bursitis, headaches stemming from the bilateral third occipital nerves, and post-traumatic stress disorder. *Id.* ¶ 19. She states that she "has suffered, and will continue to suffer, injuries, damages, and losses, including but not limited to past and future medical expenses, lost wages, loss of earning potential, loss of enjoyment and quality of life, permanent impairment, pain and suffering, mental anguish,

---

[1] On a motion to dismiss, in determining whether the operative complaint states a claim for relief, the Court views the allegations in a light most favorable to the plaintiff, as the non-moving party. *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

and emotional distress." *Id.* ¶ 20. As a result of the accident, Plaintiffs allege that Mrs. Keller has incurred past medical expenses exceeding $164,496.77; approximately $150,000.00 in past lost wages, $18,800.00 in past lost benefits, and $11,900.00 in past essential home services; approximately $705,500.00 in future medical expenses; approximately $1,039,000.00 in future lost wages and benefits; and $76,000.00 in future essential home services. *Id.* ¶¶ 37-41.

Since the collision, Plaintiffs' physical and emotional relationship has been negatively impacted. *Id.* ¶ 21. Mr. Keller now does the majority of the household duties, including cooking, grocery shopping, and cleaning. *Id.* ¶ 22. Plaintiffs have been unable to engage in activities they once participated in together prior to the collision. *Id.* ¶ 23. Mr. Keller takes Mrs. Keller to doctor's appointments, has cared for her after surgical procedures, and provides emotional support for Mrs. Keller's mental anguish. *Id.* ¶ 24. Mr. Keller now carries the majority of the financial responsibility for the household. *Id.* ¶ 25. He asserts that he is legally entitled to collect underinsured motorist ("UIM") benefits from Defendant for damages relating to his derivative claim of loss of consortium.[2] *Id.* ¶ 45.

At the time of the accident, Plaintiffs were insured under an automobile insurance policy issued by Defendant, Policy No. 060 6334-B01-06H, for the period of February 1, 2016, to February 1, 2017. *Id.* ¶ 27. The policy included UIM coverage with limits of

---

[2] The Court notes that, in the "General Allegations" section of the operative complaint, Mrs. Keller asserts also that she is legally entitled to collect underinsured motorist benefits from Defendant for various economic and non-economic damages. *Am. Compl.* [#48] ¶¶ 42-44. However, given that she is voluntarily no longer pursuing her breach of contract claim, *compare Compl.* [#5] ¶¶ 105-11 *with Am. Compl.* [#48] ¶¶ 133-39, these statements about Mrs. Keller's right to collect underinsured motorist benefits appear, as best the Court can discern, to simply be the result of misediting when the original Complaint [#5] was edited to create the Amended Complaint [#48].

$100,000.00 per person. *Id.* ¶ 28. In addition, at the time of the accident, Kyle Keller, Plaintiffs' son, resided with Plaintiffs in their home. *Id.* ¶ 30. He was insured under an automobile insurance policy issued by Defendant, Policy No. 406 6739-D11-06B, for the period of October 11, 2016, to April 11, 2017. *Id.* ¶ 31. Kyle Keller's policy included UIM coverage with limits of $50,000.00. *Id.* ¶ 32. Plaintiffs assert that they were insureds under his policy based on the policy's "resident relative" clause. *Id.* ¶ 33. At the time of the accident, Mr. Moseley, through Wear Parts and Equipment Company, Inc., was insured under a policy with $1,000,000.00 in bodily injury coverage. *Id.* ¶ 35. Plaintiffs assert that, in the event Plaintiffs sustained injuries, damages, and losses exceeding Mr. Moseley's bodily injury coverage of $1,000,000.00, Mr. Moseley is considered underinsured under the terms of their policies. *Id.* ¶ 36.

On January 10, 2017, four days after the accident, Mrs. Keller, through her attorneys, requested that Defendant open a UIM claim and provide her with a copy of her policy. *Id.* ¶ 46. Between January 10, 2017, and March 24, 2018, Defendant negotiated Mrs. Keller's separate property loss claim but allegedly failed to open and investigate her UIM claim. *Id.* ¶ 53. On January 16, 2017, Defendant responded to Mrs. Keller's letter of representation with a letter "confirming coverage" for Mrs. Keller's collision. *Id.* ¶ 47. However, the only policy information Defendant sent to Mrs. Keller's attorneys on January 16, 2017, was for her vehicle, which did not have UIM coverage. *Id.* ¶ 48. Defendant did not send Mrs. Keller information relating to the UIM coverage available to her under the other policies. *Id.* ¶ 49. On March 13, 2017, Defendant sent Mrs. Keller the signed rejection form for her UIM coverage on her vehicle, but the accompanying letter did not provide her with any information regarding her UIM coverage under the other policies. *Id.*

¶¶ 50-51. On July 15, 2017, Plaintiffs sent a letter to Defendant regarding a property loss settlement dispute, in which they included a statement that Mrs. Keller was seriously injured as a result of the accident. *Id.* ¶ 52.

Plaintiffs do not provide allegations for any events occurring between March 25, 2018, and March 3, 2019. On March 4, 2019, Mrs. Keller, though counsel, sent Defendant a letter following up on her January 10, 2017 letter (which she attached for reference) requesting a certified copy of her policy confirming her desire to open an UIM claim. *Id.* ¶¶ 54-55. On March 21, 2019, Mrs. Keller resent the March 4, 2019[3] letter and January 10, 2017 attachment, because she had not received a response from Defendant or a certified copy of the applicable policies. *Id.* ¶ 56. On April 17, 2019, Defendant sent Mrs. Keller the certified copies of several policies, for the first time since her initial request on January 10, 2017. *Id.* ¶ 57.

In December 2019, Plaintiffs filed a lawsuit against Mr. Moseley and his employer. *Compl. in 2019CV31998* [#52-3].[4] The state court complaint included four negligence claims by Mrs. Keller and two loss of consortium claims by Mr. Keller. *Id.* ¶¶ 28-60.

On February 16, 2021, Plaintiffs, through their attorneys, sent Defendant a letter with a request for a full and fair evaluation of Mrs. Keller's claim. *Id.* ¶ 59. This letter provided extensive documentation, including multiple expert reports demonstrating that Mrs. Keller's economic losses exceeded $2,000,000.00; past medical bills exceeding

---

[3] Plaintiff actually refers here to the "March 2, 2019" letter, but this appears to be a typographical error as she is clearly referring to the aforementioned March 4, 2019 letter. *See Am. Compl.* [#48] ¶¶ 54-56.

[4] The Court may consider documents that are a matter of public record, such as court filings, without converting the motion to dismiss to a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). All outside documents cited by the Court in this Recommendation fall into this category.

$150,000.00; expert reports supporting future economic losses exceeding $700,000.00; and expert reports supporting future wage and benefits losses exceeding $1,000,000.00. *Id.* ¶¶ 60-63. On March 22, 2021, Plaintiffs followed up with Defendant after not receiving a response to their request for benefits, asking for an evaluation and correcting an oversight in leaving Kyle Keller's policy limits out of their prior request for benefits. *Id.* ¶ 64. On April 7, 2021, Plaintiffs again followed up with Defendant, asking for an evaluation of their claim because they had yet to receive a response. *Id.* ¶ 65.

On April 15, 2021, Defendant responded to Plaintiffs, asserting that it had sent a response on March 24, 2021, which included the following questions and statements: "Has Mrs. Keller settled with the underlying carrier? If so, what date? What was the amount o[f] the underlying coverage? What was the amount of the settlement? We have not received a request for consent to settle. We also are trying to determine if the Statute of Limitations has tolled." *Id.* ¶ 66. On May 5, 2021, Plaintiffs answered these questions by providing information that they had not settled, that the underlying coverage was $1,000,000.00, and that there had not been a final settlement at that time; they also reiterated that they were looking for Defendant's independent evaluation of their claims. *Id.* ¶ 67. On May 24, 2021, Plaintiffs sent a follow-up letter to Defendant requesting an evaluation of their claims as Defendant still had not provided one. *Id.* ¶ 68. On June 17, 2021, Plaintiffs sent another follow-up letter requesting an evaluation of their claims. *Id.* ¶ 69.

On June 28, 2021, Plaintiffs sent Defendant a written request to settle their claims in the state court lawsuit against Mr. Moseley and Wear Parts and Equipment Company, Inc., as Plaintiffs had scheduled mediation and expected the claim to settle (which

ultimately did not happen). *Id.* ¶ 70. On July 29, 2021, Plaintiffs sent a follow-up letter requesting both an evaluation, as requested on February 16, 2021, and permission to settle their claims, as requested on June 28, 2021. *Id.* ¶ 71. On August 11, 2021, Defendant responded to Plaintiffs by granting them permission to settle their claims against Mr. Moseley and Wear Parts and Equipment Company, Inc. and agreeing "that by settling the bodily injury claim with Acuity Insurance, Tamie J. Keller does not prejudice her ability to present an Underinsured Motorist claim with State Farm." *Id.* ¶ 72. However, this letter did not address Plaintiffs' multiple requests for an evaluation of their UIM claims. *Id.* ¶ 73.

On August 26, 2021, Plaintiffs sent Defendant a letter requesting certified copies of all of their insurance policies with Defendant, as some relevant policies had not been provided on April 17, 2019. *Id.* ¶ 74. On September 27, 2021, Plaintiffs sent Defendant a letter following up on the request for additional policies as well as their request for an evaluation of their UIM claims. *Id.* ¶ 75. On October 29, 2021, Plaintiffs sent yet another follow-up letter requesting their policies and an evaluation of their UIM claims. *Id.* ¶ 76. On November 8, 2021, Defendant responded and explained that it was questioning the "mechanism of injury and relatedness of the concussion symptoms/treatment to this motor vehicle accident only." *Id.* ¶ 77.

On November 10, 2021, Plaintiffs' attorney called Defendant to follow-up on Plaintiffs' requests for an evaluation, but she was told Defendant had never opened a UIM claim for them. *Id.* ¶ 78. Later the same day, Plaintiffs sent a letter to Defendant detailing this telephone conversation and requesting a response as to why Defendant had waited nine months to question the relatedness of Mrs. Keller's concussion

symptoms/treatment. *Id.* ¶ 79. The letter further gave Defendant Mrs. Keller's prior medical records from UC Health (the same records provided to Defendant with the initial request for benefits sent on February 16, 2021) and again requested an evaluation of Plaintiffs' claims. *Id.* ¶ 80. In addition, this letter provided Defendant with deposition transcripts from both Plaintiffs (wherein they detailed their damages, injuries, and losses), wage loss documentation, and updated records and bills. *Id.* ¶ 81.

On November 16, 2021, Defendant sent certified copies of all insurance policies to Plaintiffs but "did not send any signed rejection forms for any of the policies." *Id.* ¶¶ 84-85. Defendant also responded that it was unable to access the drop box link through which Plaintiffs had provided their documents on November 10, 2021. *Id.* ¶ 82. Plaintiffs therefore sent the documents again, this time via facsimile and mail, as Defendant requested. *Id.* ¶ 83.

On December 10, 2021, Defendant wrote to Plaintiffs stating that it would need until December 22 to review the new documents and respond to their request for an evaluation. *Id.* ¶ 86. Plaintiffs responded the same day, requesting all signed UIM rejection forms and reiterating that they had been requesting an evaluation since February 16, 2021, and expressing hop that they would receive one on December 22, 2021. *Id.* ¶ 87.

On December 21, 2021, Defendant sent a letter to Plaintiffs again requesting five years of prior records "due to questions [Defendant] had regarding the injuries being presented." *Id.* ¶ 88. No evaluation was provided; rather, the letter informed Plaintiffs that once Defendant received the prior records, it would "move forward with additional medical management, either a Utilization Review or an Independent Medical Examination," and

that Defendant would make that determination "after review of the records." *Id.* ¶ 89. This letter was Defendant's first mention of needing a "Utilization Review" or a medical examination to evaluate Plaintiffs' claims. *Id.* ¶ 90.

On January 18, 2022,[5] Plaintiffs responded by letter to Defendant by repeating that Defendant had been given Mrs. Keller's prior medical records in Plaintiffs' initial request for benefits on February 16, 2021. *Id.* ¶ 91. In the same letter, Plaintiffs explained that Mrs. Keller did not have any prior treatment to the areas she injured in the January 6, 2017 collision, and they again requested an evaluation of their claims. *Id.* ¶¶ 92-93.

On January 25, 2022, Plaintiffs filed the present lawsuit in Boulder County District Court. *Id.* ¶ 94. On February 24, 2022, Defendant removed the case to the United States District Court for the District of Colorado. *Id.* ¶ 95. The same day, Defendant sent an email to Plaintiffs' counsel requesting voluminous documents, including documents Defendant already had available to it. *Id.* ¶ 96. Plaintiffs assert that this was the first time Defendant had requested any of the information it was now seeking to investigate and evaluate Plaintiffs' claims for UIM benefits. *Id.* ¶ 97. On March 8, 2022, Plaintiffs' counsel responded, stating that Plaintiffs would produce all relevant information when initial disclosures were due. *Id.* ¶ 98.

On March 7, 2022, the Court issued an Order [#10] setting the case for a Scheduling Conference to be held on April 18, 2022, at 10:30 a.m. *Id.* ¶ 99. On March 24, 2022, Defendant filed a Motion for Stay of Proceedings [#13], asking for a stay of this case pending the results of the August 1, 2022 jury trial set in the state court case. *Id.* ¶

---

[5] In paragraphs 91-93 of the Amended Complaint [#48], Plaintiffs state that this date was "January 18, 2021." However, given the context and the chronological nature of Plaintiffs' recitation, these appear to be mere typographical errors, with January 18, 2022, being the correct date for all three paragraphs.

100. On April 7, 2022, Defendant separately moved to vacate the April 18 Scheduling Conference and requested an extension for exchanging disclosures. *Id.* ¶ 101. Around the same time, Defendant allegedly refused to draft or participate in drafting the Proposed Scheduling Order in anticipation of the Scheduling Conference. *Id.* ¶ 102. On April 11, 2022, Defendant again requested many documents, records, and information from Plaintiffs. *Id.* ¶ 103. On April 22, 2022, the Court ordered Defendant to comply with drafting the Proposed Scheduling Order. *Id.* ¶ 104. The Scheduling Conference was held on April 25, 2022, and the discovery plan was set. *Id.* ¶ 105. On April 26, 2022, the Court granted Defendant's Motion to Stay Proceedings [#13], staying discovery pending resolution of the state court case. *Id.* ¶ 106. The Court noted that, if Plaintiffs' damages exceeded the amount of coverage available under Mr. Moseley's policy, Plaintiffs could potentially have a viable claim for UIM benefits from Defendant. *Id.* ¶ 107.

On May 24, 2022, Defendant again requested publicly available documents and information it had failed to request pre-lawsuit. *Id.* ¶ 108. In the same letter, Defendant threatened to include a non-cooperation defense and withdraw benefits from Plaintiffs if they did not comply with Defendant's demand for documents. *Id.* ¶ 109. On May 31, 2022, Plaintiffs provided thousands of pages of records and documents to Defendant, many of which were duplicates of what had already been provided. *Id.* ¶ 110.

On June 14, 2022, Defendant sent another email to Plaintiffs requesting more documents, including some documents that were already publicly available to Defendant. *Id.* ¶ 111. In the same letter, Defendant again threatened to pursue non-cooperation and withdraw benefits from Plaintiffs if they did not comply. *Id.* ¶ 112. On June 15, 2022, Plaintiffs' attorneys responded to Defendant, questioning the relevance of some of the

requested documents to Defendant's investigation and pointing out that Defendant already had access to documents it was demanding from Plaintiffs. *Id.* ¶ 113. Plaintiffs also advised Defendant that, given the stay on discovery that Defendant had requested, the demands for documents were reaching the level of harassment and, although Plaintiffs would comply with producing the requested documents, they would be forced to file a motion for protective order if Defendant continued to request more documents. *Id.* ¶ 114.

On June 16, 2022, Defendant responded, again threatening non-cooperation and a withdrawal of benefits from Plaintiffs if they did not comply with Defendant's demands. *Id.* ¶ 115. The same day, given Defendant's insistence on demanding discovery from Plaintiffs while avoiding production due to the stay, Plaintiffs replied that they would be seek a protective order. *Id.* ¶ 116. After Plaintiffs again requested Defendant's position on Plaintiffs' expected motion for protective order, Defendant stopped demanding documents from Plaintiffs. *Id.* ¶ 119.

On July 27, 2022, Mr. Keller voluntarily dismissed his claims for loss of consortium damages in the state court action with prejudice. *See July 27, 2022 Stipulation for Dismissal with Prejudice of Lawrence J. Keller's Claim Only* [#52-5] at 1; *July 28, 2022 Order re: Stipulation For Dismissal with Prejudice of Lawrence J. Keller's Claim Only* [#52-5] at 4. On August 8, 2022, the jury in the state court trial returned a verdict on Mrs. Keller's claims. *Id.* ¶ 120. The jury awarded $240,000 in non-economic damages, $346,000 in economic damages, and $75,000 in physical impairment damages. *Am. Judgment* [#52-7]. Thus, on August 10, 2022, the state court entered judgment in favor of Mrs. Keller and against Mr. Moseley and his employer in the amount of $661,000, plus

interest. *Id.* The parties subsequently agreed to a calculation of interest in the amount of $390,399.20 prejudgment and $295.25 per day post-judgment. *Id.* The state court therefore amended the original judgment to a total amount of $1,051,399.20 through August 10, 2022, plus $295.25 per day in post-judgment interest until satisfied. *Id.* On September 1, 2023, Mrs. Keller filed a Full Satisfaction of Judgment [#52-8] indicating that she had been paid $1,056,843.45 in full satisfaction of the Amended Judgment [#52-7], inclusive of pre-judgment and post-judgment interest, but exclusive of costs. On September 22, 2023, Plaintiffs sought leave in the present case to file an Amended Complaint voluntarily dropping Mrs. Keller's breach of contract claim against Defendant. *See* [#41]. The Court later granted this request. *Order* [#47].

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12 (b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitled to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

In the Motion [#52], Defendant presents three primary arguments: (1) "Mr. Keller cannot plausibly allege a breach of contract loss of consortium claim and waiver and issue preclusion also bar his claim"; (2) "as no covered benefits are owed, Plaintiffs fail to sufficiently plausibly establish that State Farm delayed or denied any covered benefits unreasonably or in bad faith"; and (3) "even if a bad faith claim could arguably survive despite no covered benefits being owed, Plaintiffs have failed to plausibly allege a bad faith claim with allegations of nonactionable and inadmissible conduct." *Motion* [#52] at 7, 10, 12. To address these arguments sequentially, the Court will address Plaintiffs' claims in the following order: (1) Mr. Keller's Breach of Insurance Contract (Claim 1); (2) Statutory Unreasonable Delay or Denial of Benefits (Claim 3); and (3) Common Law Bad Faith Breach of Insurance Contract (Claim 2).

### A. Claim One: Breach of Insurance Contract

In the Amended Complaint [#48], Mr. Keller asserts a breach of insurance contract claim seeking loss of consortium damages. "Loss of consortium" means loss of "the

society, companionship, and services of [a] spouse." *Lampton v. United Servs. Auto. Ass'n*, 835 P.2d 532, 534 (Colo. App. 1992). "[A] claim for loss of consortium [is] considered collateral or derivative to the personal injury claim[.]" *Lee v. Colo. Dep't of Health*, 718 P.2d 221, 230 (Colo. 1986).

Here, among other arguments, Defendant asserts that Mr. Keller's breach of contract claim must be dismissed under the doctrine of issue preclusion because both this case and the state court case address the same issue, i.e., whether Mr. Keller is entitled to UIM damages for loss of consortium under the relevant insurance policies. *Motion* [#52] at 9-10. Issue preclusion, also known as collateral estoppel, bars litigation of an issue at a later proceeding if four elements are met: "(1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Berryman v. Niceta*, No. 23-cv-00285-CNS-NRN, 2023 WL 4847583, at *3 (D. Colo. July 28, 2023) (quoting *Starkey v. Boulder Cnty. Soc. Servs.*, No. 06-cv-00659-LTB-PAC, 2006 WL 8073690, at *3 (D. Colo. Nov. 21, 2006)). "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation and internal quotation marks omitted).[6]

---

[6] The Court notes that the closely-related doctrine of claim preclusion would not be appropriately asserted here. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892 (internal quotation marks omitted). In the state court

Regarding the first element, i.e., whether the issue previously decided is identical with the one presented in the action in question, there is no dispute that the factual issues underlying Mr. Keller's loss of consortium claims in the state court action are based on the same events as his breach of contract claim in this action. *Compare Am. Compl.* [#48] ¶¶ 133-39 (discussing Mr. Keller's breach of contract claim), ¶ 45 ("As a result of the January 6, 2017, Incident, Mr. Keller was legally entitled to collect UIM benefits for damages exceeding the Bodily Injury limits for his derivative claim of loss of consortium."), ¶ 127 ("State Farm has unreasonably disregarded the deposition testimony and statements of Mr. and Mrs. Keller regarding their complete loss of intimacy, companionship, and Mr. Keller being forced to undergo almost all household and employment responsibilities since the January 6, 2017, Incident in delay and denial of Mr. Keller's derivative UIM claim for loss of consortium.") *with State Court Compl. in 2019CV31998* [#52-3] ¶¶ 51-60 (discussing loss of consortium claims against Mr. Moseley and Wear Parts and Equipment Company, Inc. with regard to the January 6, 2017 accident). Therefore, the Court finds that the first element of issue preclusion is met.

Regarding the second element, i.e., whether the prior action has been finally adjudicated on the merits, Mr. Keller voluntarily dismissed his loss of consortium claim in the state court action *with* prejudice. *July 27, 2022 Stipulation for Dismissal with Prejudice of Lawrence J. Keller's Claim Only* [#52-5] at 1 (stating that the parties "stipulate that all claims between Lawrence Keller, **only**, and Defendants shall be dismissed, with prejudice, pursuant to C.R.C.P. 41"); *July 28, 2022 Order re: Stipulation For Dismissal*

---

lawsuit, Mr. Keller asserted claims for loss of consortium, while here he asserts a claim for breach of insurance contract (seeking damages for loss of consortium). Thus, "the very same claim" is not at issue in both lawsuits.

*with Prejudice of Lawrence J. Keller's Claim Only* [#52-5] at 4 ("The Court . . . hereby dismisses Lawrence Keller from this lawsuit with Prejudice."). "A voluntary dismissal with prejudice operates as a final adjudication on the merits," and is thus a "final judgment." *Schiemer v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) (internal citations and quotation marks omitted). Therefore, the Court finds that the second element of issue preclusion is met.

Regarding the third element, i.e., whether the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, Mr. Keller is the party against whom Defendant is invoking the doctrine here, and he was the party litigating the issues in the state court action. *See State Court Compl. in 2019CV31998* [#52-3] ¶¶ 51-60 (discussing loss of consortium claims asserted by Mr. Keller). Therefore, the Court finds that the third element of issue preclusion is met.

Regarding the fourth element, i.e., whether the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action, there is no indication that Mr. Keller did not have a full and fair opportunity to litigate the loss of consortium issues in the state court action. *Compare State Court Compl. in 2019CV31998* [#52-3] at 1 (filed December 20, 2019) *with Order re: Stipulation For Dismissal with Prejudice of Lawrence J. Keller's Claim Only* [#52-5] at 4 (issued July 28, 2022). He states that he "dismissed his claim to ensure his wife received the entirety of the bodily injury policy, after years of watching her suffering from her injuries, hoping his own insurance company would step in as required by policy and law." *Response* [#61] at 6. However, this does not explain how he did not have the *opportunity* to litigate his claim in the state court action. Further, Mr. Keller has not explained why, if he planned to further pursue

this same claim elsewhere, such as in this federal lawsuit, why he did not seek to have his loss of consortium claim dismissed *without* prejudice. Based on the entirety of the Amended Complaint [#48] and on the state court documents appropriately considered, the Court finds that the fourth element of issue preclusion is met.

In short, the Court finds that the four elements of issue preclusion are met. Accordingly, the Court **recommends** that Mr. Keller's First Claim for Relief, breach of insurance contract, be **dismissed with prejudice**. *See, e.g.*, *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990) (noting that dismissal without prejudice is appropriate only where a defect in the pleading could be corrected).

## B.    Claim Three: Statutory Unreasonable Delay or Denial of Benefits

A statutory claim for unreasonable delay or denial of insurance benefits requires a plaintiff to show that "'the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.'" *Giertz v. State Farm Mut. Auto. Ins. Co.*, No. 22-1114, 2023 WL 3728197, at *3 n.10 (10th Cir. May 26, 2023) (quoting Colo. Rev. Stat. § 10-3-1115(2)). Here, Defendant argues that, in the absence of a showing that any benefits are owed under the insurance contract, Plaintiffs' statutory unreasonable delay or denial claim fails as a matter of law. *Motion* [#52] at 10-12.

Under Colorado law, "before an insured individual can recover against her [or his] UIM carrier for . . . statutory . . . bad faith, she [or he] must first establish she [or he] is entitled to UIM benefits." *Giertz*, 2023 WL 3728197, at *3. For example, in *Gerald H. Phipps, Inc. v. Travelers Property Casualty Company of America*, 679 F. App'x 705, 710 (10th Cir. 2017), the plaintiff had argued that the district court had incorrectly determined that its statutory bad faith claim was time-barred. Instead of addressing that issue, the

Circuit affirmed entry of summary judgment on this claim on an alternative ground, i.e., because the plaintiff had "failed to demonstrate a loss to covered property." *Gerald H. Phipps, Inc.*, 679 F. App'x at 710 (citing *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009)). The Senior District Judge assigned to the present action has also repeatedly held that, where coverage is properly denied under an insurance policy, because "bad faith claims flow from the denial of coverage, the Court finds as a matter of law that [the insured] cannot proceed on its . . . statutory bad faith claims." *The Lodge at Mountain Village Owner Ass'n, Inc. v. Eighteen Certain Underwriters of Lloyd's of London*, 591 F. Supp. 3d 1008, 1019 (D. Colo. 2022).

Plaintiffs' rather unfocused argument to the contrary does not explain why Plaintiffs' statutory claim in this lawsuit may be unique. *See Response* [#61] at 7-9. In fact, Plaintiffs' primary argument with respect to statutory bad faith appears to primarily be based on an incorrect statement of the law. *See id.* at 9. Plaintiffs state that, "on a statutory bad faith claim, all Plaintiffs need prove is (1) did State Farm delay benefits, and (2) was that delay reasonable." *Id.* (failing to cite legal authority). As noted above, the benefits at issue must have been covered by the insurance policy, and where no benefits are owed, then payment of those benefits cannot, as a matter of law, have been unreasonably delayed to the insured or denied by the insurer. *See Giertz*, 2023 WL 3728197, at *3.

Accordingly, the Court **recommends** that the Motion [#52] be **granted** to the extent that Plaintiff's Claim Three: Unreasonable Delay and Denial of Benefits Pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116 be **dismissed with prejudice**. *See, e.g.*, *Reynoldson*, 907 F.2d at 126-27.

**C.     Claim Two: Common Law Bad Faith Breach of Insurance Contract**

A common law claim of bad faith breach of an insurance contract requires a plaintiff to show that "the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness in the denial of a covered claim." *Giertz*, 2023 WL 3728197, at *3 n.10 (citing *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000)).

Under Colorado law, to recover against one's UIM carrier for common law bad faith, an insured must first establish an entitlement to UIM benefits. *Giertz*, 2023 WL 3728197, at *3 (10th Cir. May 26, 2023) (citing *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 228 (Colo. App. 2002), *superseded by statute on other grounds*, *as recognized in Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 148 n.10 (Colo. 2007). An insurer has a duty "to act in good faith and deal fairly with its insured." *Daugherty*, 55 P.3d at 228. That duty is triggered when "some contractual duty imposed by the insurance policy has arisen." *Id*. "While the contractual duty and the duty to act in good faith are separate and distinct duties, they are related, and both must exist simultaneously to create a bad faith claim." *Id*.; *see also Jarnagin v. Banker's Life & Cas. Co.*, 824 P.2d 11, 15 (Colo. App. 1991) (affirming summary judgment in the defendant's favor on bad faith and other claims after concluding that the defendant had a right to deny payment of benefits). *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 325-26 (Colo. App. 1995) (affirming entry of summary judgment in favor of the insurer on bad faith claim where no coverage existed under the insurance policy).

The Senior District Judge assigned to this action has repeatedly held that, like statutory bad faith claims, common law bad faith claims cannot survive when the insurer

owed no benefits. For example, in *New Hampshire Insurance Company v. TSG Ski & Golf, LLC*, the District Judge held that the insured's bad faith breach of insurance contract claim failed as a matter of law where coverage was precluded. __ F. Supp. 3d __, __, No. 21-cv-01873-CMA-SP, 2023 WL 3509684, at *9 (D. Colo. May 17, 2023) (granting summary judgment for insurers on breach of contract and bad faith counterclaims because " the Knowledge of Falsity Exclusions preclude coverage with respect to the Underlying Lawsuit") (citing *MarkWest Hydrocarbon, Inc.*, 558 F.3d at 1193 (noting that Colorado law does not sustain a bad faith claim where " coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.")); *see also Mesa Underwriters Specialty Ins. Co. v. Hawk Prods. LLC*, No. 20-cv-03159-CMA-NRN, 2022 WL 990715, at *2 (D. Colo. Apr. 1, 2022) (finding that insured's common law bad faith claim "cannot succeed . . . as a matter of law" because the insured was not entitled to benefits); *The Lodge at Mountain Vill. Owner Ass'n,* 591 F. Supp. 3d at 1019 (reasoning that the common law bad faith claims must fail because " the insurance company's denial of coverage was proper as a matter of law"); *Peterson v. UAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018) (granting insurer summary judgment on bad faith claim because "denial of coverage was proper as a matter of law"), *aff'd*, 814 F. App'x 408 (10th Cir. 2020) (rejecting bad faith argument upon finding insured failed to "show[ ] that she was improperly denied coverage under the policy").

Even assuming, arguendo, that the common law bad faith breach of insurance contract claims were not automatically barred in full, the Court notes that Plaintiffs have not explained how any claimed damages stemming from their common law bad faith do not flow from the denial of coverage. *See MarkWest Hydrocarbon, Inc.*, 558 F.3d at 1193.

They seek "economic and non-economic damages" in connection with this claim. *Am. Compl.* [#48] ¶ 145. Every statement regarding damages stems from the alleged failure to investigate and evaluate Plaintiffs' claims resulting in alleged unreasonable delay and denial of benefits. For example, Plaintiffs state:

- "State Farm unreasonably failed to investigate and evaluate in delay and denial of Mr. Keller's and Mrs. Keller's injuries, damages, and losses since the Kellers initially filed notice of their claims on January 10, 2017," *Am. Compl.* [#48] ¶ 121;

- "State Farm unreasonably failed to investigate and evaluate Mr. Keller's and Mrs. Keller's Request for Benefits for over 336 days since the request was sent on February 16, 2021," *id.* ¶ 122;

- "State Farm unreasonably disregarded the opinions of multiple medical experts in delay and denial of Mr. Keller's and Mrs. Keller's UIM claims," *id.* ¶ 123;

- "State Farm recklessly disregarded the value of Mr. Keller's and Mrs. Kellers' UIM claims by completely disregarding their Request for Benefits in delay and denial of the Kellers' UIM claims," *id.* ¶ 124;

- "State Farm has unreasonably disregarded the pain and suffering, inconvenience, loss of enjoyment, and mental anguish Mrs. Keller has experienced after being t-boned, sustaining a traumatic brain injury, undergoing surgical repair of her shoulder and hip, undergoing multiple medical procedures for her neck pain and migraines, and enduring years of pain and treatment in delay and denial of Mrs. Keller's UIM claim," *id.* ¶ 125;

- "State Farm has unreasonably disregarded the expert opinions that Mrs. Keller will be permanently physically impaired and unable to work for the remainder of her lifetime in delay and denial of Mrs. Keller's UIM claim," *id.* ¶ 126;

- "State Farm has unreasonably disregarded the deposition testimony and statements of Mr. and Mrs. Keller regarding their complete loss of intimacy, companionship, and Mr. Keller being forced to undergo almost all household and employment responsibilities since the January 6, 2017, Incident in delay and denial of Mr. Keller's derivative UIM claim for loss of consortium," *id.* ¶ 127;

- "State Farm has not provided Mr. Keller and Mrs. Keller with an evaluation of their UIM claims," *id.* ¶ 128;

- "State Farm has not made any payments to Mr. Keller and Mrs. Keller for any undisputed amounts to compensate them for their injuries, damages, and losses," *id.* ¶ 129; and

- "State Farm has unreasonably delayed and denied all of Mr. Keller's and Mrs. Keller's past and future injuries, damages, and losses," *id.* ¶ 130.

The Amended Complaint contains no allegations allowing the Court to find that damages were suffered which do not flow from the denial of coverage.

Accordingly, the Court **recommends** that the Motion [#52] be **granted** to the extent that Plaintiff's Claim Two: Common Law Bad Faith Breach of Insurance Contract be **dismissed with prejudice**. *See, e.g.*, *Reynoldson*, 907 F.2d at 126-27.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#52] be **GRANTED** and that Plaintiffs' claims be **DISMISSED with prejudice**.

IT IS FURTHER **ORDERED** that any party may file objections Recommendation **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: September 15, 2023

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge